**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---

| | | |
|---|---|---|
| ACE AMERICAN INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| KENNY CONSTRUCTION COMPANY, EDC | ) | |
| MANAGEMENT, INC. d/b/a THE ENTERPRISE | ) | |
| COMPANIES, RONALD B. SHIPKA, JR., | ) | |
| JOHN Y. SHIPKA, and GORDON | ) | |
| CAMERANESI and MUSEUM PARK PLACE | ) | |
| SOUTH CONDOMINIUM ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, ACE AMERICAN INSURANCE COMPANY ("ACE"), by its attorneys, Walker Wilcox Matousek, LLP, and for its Complaint for Declaratory Judgment against defendants KENNY CONSTRUCTION COMPANY ("Kenny"), EDC MANAGEMENT, INC. d/b/a THE ENTERPRISE COMPANIES ("Enterprise"), RONALD B. SHIPKA, JR., JOHN Y. SHIPKA, and GORDON CAMERANESI and MUSEUM PARK PLACE SOUTH CONDOMINIUM ASSOCIATION ("Association"), states as follows:

### NATURE OF THE ACTION AND RELIEF SOUGHT

1. This is an action for declaratory judgment brought pursuant to 28 U.S.C. §2201 to determine and resolve questions of actual controversy under certain commercial general liability policies of insurance plaintiff ACE issued to Kenny. As more fully set forth below, ACE denies that it owes a duty to defend, indemnify, or otherwise provide coverage to Kenny, Enterprise or Enterprise's employees Ronald B. Shipka, Jr., John Y. Shipka, and Gordon Cameranesi (Enterprises employees are referred herein collectively as "Individual Defendants") under said

policies of insurance for claims asserted against Kenny by the Association in an underlying lawsuit regarding construction defects at a condominium building built by Kenny and developed by Enterprise.

2.     ACE seeks herein a declaration that it owes no duty to defend, indemnify, or otherwise provide coverage to Kenny or Enterprise for the underlying lawsuit.

## THE PARTIES

3.     Plaintiff ACE is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania and, at all relevant times, was authorized to conduct business in the State of Illinois, including Cook County.

4.     Defendant Kenny is an Illinois corporation with its principal place of business in Northbrook, Illinois. At all relevant times, Kenny was a general construction contractor conducting business in the State of Illinois.

5.     Defendant Enterprise is an assumed name of EDC Management, Inc., an Illinois corporation that regularly conducts business in Cook County, Illinois.  Upon information and belief, Enterprise is a defunct and/or bankrupt entity.

6.     Upon information and belief, Ronald B. Shipka, Jr. was an agent, employee, manager, or owner of Enterprise and was an original member of the Developer Board of the Association.  Upon information and belief, at all times relevant to the Complaint, Shipka, Jr. was a resident of Cook County, Illinois.

7.     Upon information and belief, John Y. Shipka was an agent, employee, manager, or owner of Enterprise and was an original member of the Developer Board of the Association. Upon information and belief, at all times relevant to the Complaint, Shipka, Jr. was a resident of Cook County, Illinois.

8.     Upon information and belief, Gordon Cameranesi was an agent, employee, manager, or owner of Enterprise and was an original member of the Developer Board of the Association.  Upon information and belief, at all times relevant to the Complaint, Shipka, Jr. was a resident of Cook County, Illinois.

9.     Defendant Association is a duly organized and licensed Illinois not-for-profit corporation with its principal place of business in Chicago, Cook County, Illinois.   The Association is the governing body of Museum Park Place South Condominiums a/k/a Harborview Condominiums ("Property"), a 288-unit residential condominium located at 1901 South Calumet Avenue in Chicago, Illinois.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper in this Court, pursuant to 28 U.S.C. §1332(a), because the plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     Venue is proper in this District, pursuant to 28 U.S.C. §1391(a)(2), because the events giving rise to the claims for coverage under the policies issued by ACE occurred within this District.

## THE UNDERLYING LAWSUIT

12.     In December 2016, the Association filed a lawsuit captioned *Museum Park Place South Condominium Association v. LR Development Company, LLC d/b/a Related Midwest, et al*, Case No. 16 L 011770, which is pending in the Circuit Court of Illinois, Cook County – Law Division ("Underlying Lawsuit"). A copy of the Underlying Lawsuit is attached at Exhibit A.

13.     The Underlying Lawsuit named as defendants LR Development Company, LLC d/b/a Related Midwest, Grant Park Chicago Syndicated Holdings II, LLC, Kenny, Parcel C Phase 2, LLC, Enterprise, and the Individual Defendants.

14.     The Association alleges that Enterprise retained Kenny to provide general contracting services to construct and develop the Property. (Ex. A ¶ 17).

15.     The Association alleges that the garage structure at the Property was constructed by a subcontractor retained by and overseen by Kenny.  (Ex. A ¶ 18).

16.     The Association alleged that the exterior insulation and finish system ("EIFS") was installed by a subcontractor retained by and overseen by Kenny.  (Ex. A ¶ 19).

17.     The Association further alleges, from incorporation of the Association to turnover of the Association to the unit owners, the Individual Defendants were members of the developer board of the Association ("Developer Board") that governed, administered and controlled the business of the Association until it relinquished control of the Association to duly elected unit owners ("Owner Board"). (Ex. A ¶¶ 26-27).

18.     According to the Association, the Owner Board became aware of numerous serious problems with the Property, including but not limited to design and/or workmanship defects, including the following:

    a.     Active water infiltration through the stairwell/roof access door;

    b.     Unprotected cracks on parking surfaces, failure to install appropriate waterproofing system at topside surfaces, failure to install a membrane system, failure to install mirrors or other safety devices at obstructed turn lanes, water leaking on cars, leaks in stair vestibules, and unsealed openings including penetrations through fire-rated wall and floor assemblies;

    c.     Loose and dislodged floor tiles in elevator lobbies;

    d.     Failure to install appropriate fire-rated seal at the hatch and drywall opening in the trash chute;

    e.     Improperly installed clean-out cap on the loading dock;

      f.      Unsealed penetrations through wall and floor constructions at the first floor mechanical spaces;

      g.      Pavement cracking on shared access drive;

      h.      Unsealed open joints at metal cladding panels;

      i.      Improperly installed EIFS causing cracks, deterioration, and interior leaks in common areas behind the EIFS cladding and in residential units below;

      j.      Water infiltration and leaks into units of unknown origin; and

      k.      Improper or no soundproofing material installed at fitness center.

(Ex. A ¶¶ 29-30).

19.     The Association alleges that the defects listed above existed at the time of turnover to the Owner Board, that Kenny, Enterprise and others knew or should have known about the existence of the Defects, and that Kenny, Enterprise, the Individual Defendants and others never disclosed the existence of the defects to the Association or to prospective purchasers of condominium units.  (Ex. A ¶¶ 31-33).

20.     The Association alleges that the defects affect both the common elements of the Property and the individual units, and diminish the Association's and its members' abilities to utilize and enjoy their homes as intended and diminish the value of the Property and of the units therein. (Ex. A ¶¶ 34-35).

21.     The Association asserts a single cause of action against Kenny for Breach of Implied Warranty of Habitability.  (Ex. A, Count II ¶¶ 45-52).

22.     The Association asserts causes of action against Enterprise for Breach of Implied Warranty of Habitability (Ex. A Count II ¶¶ 45-52) and Breach of Fiduciary Duty.  (Ex. A, Count V ¶¶ 69-81).

23.     The Association asserts a cause of action for Breach of Fiduciary Duty against the Individual Defendants.  (Ex. A, Count V ¶¶ 69-81).

## THE ACE INSURANCE POLICIES

24.     ACE issued to Kenny, as named insured, Commercial General Liability Policy Nos. HDO G24510517R, effective July 1, 2007-08, HDO G24510347, effective July 1, 2008-09, HDO G24525405, effective July 1, 2009-12[1], and HDO G24548557, effective July 1, 2012-2013 (collectively referred to as the "CGL Policies", attached hereto as Ex. B), and G24510554, effective July 1, 2007-2010 and G24526161, effective July 1, 2010-2013  ("OCIP Policies" attached hereto as Ex. C") (the CGL Policies and OCIP Policies are referred to collectively as the "Policies").

25.     The Policies provide in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

      **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

                        *       *       *

      b.      This insurance applies to "bodily injury" and "property damage" only if:

(1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

---

[1] Policy HDO G24525405 was effective July 1, 2009-July 1, 2010 but was renewed under the same policy number and contains the same policy language for two subsequent years, July 1, 2010- July 1, 2011 and July 1, 2011- July 1, 2012.

(2) the "bodily injury" or "property damage" occurs during the policy period; . . . .

(Policy No. HDO G24525405, Ex. B at Form CG 00 01 12 07, Page 1 of 16; OCIP

Policies, Ex. C at Form CG 00 01 12 04, page 1 of 15).

26.     The Policies contain the following Definitions:

**SECTION V – DEFINITIONS**

        \*      \*      \*

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

        \*      \*      \*

16.     "Products-completed operations hazard":

a.     Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)     Products that are still in your physical possession; or

(2)     Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

(a)     When all of the work called for in your contract has been completed.

(b)     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

7

*      *      *

17.    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

*      *      *

22.    "Your Work":

    a.    Means:

        (1)    Work or operations performed by you or on your behalf; and

        (2)    Materials, parts or equipment furnished in connection with such work or operations.

    b.    Includes

        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        (2)    The providing of or failure to provide warnings or instructions.

*      *      *

(Policy No. HDO G24525405, Ex. B at Form CG 00 01 12 07, pp. 14-16 of 16; OCIP Policies, Ex. C at Form CG 00 01 12 04, pp. 13-15 of 15).

27.     Certain of the applicable policies[2] also contain a Deductible Endorsement which modifies the COMMERCIAL GENERAL LIABILITY COVERAGE FORM in the Policy and provides:

**SCHEDULE**

Deductible Per Occurrence                     $ 250,000

\*          \*          \*

Claims Service Organization                     ESIS

1. Our obligation to pay damages and "allocated loss adjustment expense" under this policy applies only to the amount of damages and "allocated loss adjustment expense" in excess of the Deductible amount stated in the Schedule above.  The Limits of Insurance will be reduced by the amount of damages and medical expenses included in the Deductible.

    a.  The Deductible Per Occurrence shall apply separately to:

    (1)   The sum of all damages and "allocated loss adjustment expense" under Coverage A and medical expenses under Coverage C arising out of any one "occurrence", and

    (2)   The sum of all damages and "allocated loss adjustment expense" under Coverage B sustained by any one person or organization.

    b.   We shall have an obligation to pay such damages and "allocated loss adjustment expense" (i) for losses in excess of the Annual Deductible Aggregate up to an amount not to exceed our Excess of Deductible Aggregate Limit shown above; and (ii) after our Excess of Deductible Aggregate Limit has been exhausted, in excess of the Deductible Per Occurrence.  Cancellation of this policy shall not reduce the amount of the Annual Deductible Aggregate or the Excess of Deductible Aggregate Limit.

2.  You and we mutually agree that the Claim Service Organization shown in the Schedule will provide investigation, administration,

---

[2] All of the Policies contain substantially the same Deductible Endorsement.  The Deductible Endorsement in paragraph 27 is Form LD-6U73a (07/10), which appears in Policy Nos. HDO G24510517R, HDO G24510347, and HDO GH24525405 (2009-2011).

adjustment, and settlement services, and will provide for the defense of all claims or "suits" arising under this policy. Accordingly, you agree with us that we shall not have any duty to defend any such "suit", nor to pay any "allocated loss adjustment expense" within the Deductible amounts with respect to any claim or "suit".

3. You will pay all sums the insured becomes legally obligated to pay within the Deductible Per Occurrence up to the amount of the Annual Deductible Aggregate. After our Excess of Deductible Aggregate Limit has been exhausted, you will pay all such sums within the Deductible Per Occurrence.

4. We will have the right at our sole discretion:

   a. To pay any damages under this policy within the Deductible Per Occurrence should you fail to pay any final judgment against or settlement entered into by an insured.

   b. To pay any amounts within the Deductible Per Occurrence to settle any claim or "suit".

   c. To assume the defense and control of any claim or "suit" seeking payment of damages under this policy that we believe will exceed the Deductible Per Occurrence; and

   d. To pay any "allocated loss adjustment expense" incurred by us associated with a., b., or c. above.

   You shall promptly reimburse us for any sums we may have paid under Item 4.

5. All terms, conditions, and limitations of this policy not inconsistent with this endorsement shall continue to apply.

**DEFINITIONS**

When used in this endorsement:

**"Deductible Per Occurrence"** shall mean the amount of damages and "allocated loss adjustment expense" under this policy which you have a duty to pay and which arise from (i) any one "occurrence" to which insurance applies under this policy or (ii) "personal injury" or "advertising injury" (or "personal and advertising injury" if so defined in your policy) sustained by any one person or organization.

**"Allocated Loss Adjustment Expense"** shall mean any expenses, cost, and interest provided for under Section 1 – Coverages, Supplementary Payments – Coverages A and B of this policy, or any

other expenses, costs, or interest incurred in connection with the investigation, administration, adjustment, settlement or defense of any claim or "suit" arising under this policy, which the Claim Service Organization shown in the Schedule, under its accounting practices, directly allocates to a particular claim, whether or not a payment indemnifying the claimant(s) is made. Such expenses include, but are not limited to, subrogation, all court costs, fees and expenses; fees for service of process; fees and expenses to attorneys for legal services; the cost of services of undercover operations and detective; fees to obtain medical cost containment services; the cost of employing experts for the purpose of preparing maps, photographs, diagrams, and chemical or physical analysis, or for expert advice or opinion; the cost of obtaining copies of any public records; and the cost of obtaining depositions and court reporters or recorded statements. "Allocated loss adjustment expense" shall not include the salaries of our employees, adjuster's fees, the Claim Service Organization employees or any potential Claim Service Organization employees.

(Policy No. HDO G24525405, Ex. B at Endt. #3).

28.     The remaining policies[3] contain a slightly different Deductible Endorsement which modifies the COMMERCIAL GENERAL LIABILITY COVERAGE FORM in the OCIP Policy and provides:

### SCHEDULE

Deductible Per Occurrence                    $ 250,000

*        *        *

Claims Service Organization                  ESIS, Inc.

1.  In consideration of a reduced or adjusted premium, the Limits of Insurance set forth in the policy declarations are subject to and include the Deductible amount stated in the Schedule above.

    a.  The Deductible Per Occurrence shall apply separately to:

        (1)     The sum of all damages and "allocated loss adjustment expense" under Coverage A and medical expenses under

---

[3] All of the Policies contain substantially the same Deductible Endorsement. The Deductible Endorsement in paragraph 18 is Form LD6U72b (07/01), which appears in Policy Nos. HDO GH24525405 (2011-2012), G24510554, and G24526161.

Coverage C arising out of any one "occurrence", and

(2)     The sum of all damages and "allocated loss adjustment expense" under Coverage B sustained by any one person or organization.

2.  In the event you are unable to pay the Deductible amount or any portion thereof, our obligation to pay damage to satisfy a judgment or pay a settlement shall include the Deductible amount or any portion thereof.  However, our obligation to pay damages under this policy shall not exceed the Limits of Insurance as set forth in the policy declarations.

3.  Our obligation under Section 1 – Coverages, Supplementary Payments – Coverages A and B of this Policy has not changed except that "Allocated Loss Adjustment Expense" is included in the Deductible Per Occurrence amount.

4.  You and we mutually agree that the Claim Service Organization shown in the Schedule will provide investigation, administration, adjustment, and settlement services, and will provide for the defense of all claims or "suits" arising under this policy.

5.  You agree with us that we shall not have any duty to defend any such "suit."

6.  You agree with us that we shall have no duty to pay any "allocated loss adjustment expense" within the Deductible amounts with respect to any claim or "suit."

7.  You will pay all sums the insured becomes legally obligated to pay within the Deductible Per Occurrence.

8.  We will have the right at our sole discretion:

    a.  To pay any damages under this policy within the Deductible Per Occurrence should you fail to pay any final judgment against or settlement entered into by an insured.

    b.  To pay any amounts within the Deductible Per Occurrence to settle any claim or "suit".

    c.  To assume the defense and control of any claim or "suit" seeking payment of damages under this policy that we believe will exceed the Deductible Per Occurrence; and

    d.  To pay any "allocated loss adjustment expense" incurred by us associated with a., b., or c. above.

12

You shall promptly reimburse us for any sums we may have paid under Items 2 and/or 8.

## DEFINITIONS

When used in this endorsement:

**"Deductible Per Occurrence"** shall mean the amount of damages and "allocated loss adjustment expense" under this policy which you have a duty to pay and which arise from (i) any one "occurrence" to which insurance applies under this policy or (ii) "personal injury" or "advertising injury" (or "personal and advertising injury" if so defined in your policy) sustained by any one person or organization.

**"Allocated Loss Adjustment Expense"** shall mean any expenses, cost, and interest provided for under Section 1 – Coverages, Supplementary Payments – Coverages A and B of this policy, or any other expenses, costs, or interest incurred in connection with the investigation, administration, adjustment, settlement or defense of any claim or "suit" arising under this policy, which the Claim Service Organization shown in the Schedule, under its accounting practices, directly allocates to a particular claim, whether or not a payment indemnifying the claimant(s) is made. Such expenses include, but are not limited to, subrogation, all court costs, fees and expenses; fees for service of process; fees and expenses to attorneys for legal services; the cost of services of undercover operations and detective; fees to obtain medical cost containment services; the cost of employing experts for the purpose of preparing maps, photographs, diagrams, and chemical or physical analysis, or for expert advice or opinion; the cost of obtaining copies of any public records; and the cost of obtaining depositions and court reporters or recorded statements. "Allocated loss adjustment expense" shall not include the salaries of our employees, adjuster's fees, the Claim Service Organization employees or any potential Claim Service Organization employees.

29. The Policies also contain a EIFS Exclusion which modifies the COMMERCIAL GENERAL LIABILITY COVERAGE FORM in the Policies and provides:

A. This insurance does not apply to "property damage", "personal injury", or "advertising injury" arising out of, caused by, or attributable to, whether in whole or in part:

1. The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction or replacement of any "exterior insulation and finish system" (commonly referred to as synthetic stucco or EIFS) or any part thereof, or any substantially similar system or any part thereof, including the application or

13

use of conditioners, priers, accessories, flashing, coatings, caulking or sealants in connection with such a system; or

2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on any part of that structure.

B. The following is added to definitions (Section V):

a. A rigid or semi rigid insulation board made of expanded polystyrene or other materials; and

b. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate and

c. a reinforced base coat; and

d. a finish coat providing surface texture and color.

30. The Policies also contained an "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization Endorsement", which identifies "EDC 1400 Museum Park LLC" and "EDC Management, Inc. 1400 Museum Park LLC" as additional insureds and further provides as follows:

A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal or advertising injury" caused, in whole or in part by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

In the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

31. The Policies also contain the following exclusions under Coverage A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

2. **Exclusions**

This insurance does not apply to:

\*        \*        \*

14

l.       **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

\*       \*       \*

(Policy No. HDO G24525405, Ex. B at Form No. CG 00 01 02 07, pp. 2 and 5 of 16;

OCIP Policies, Ex. C at Form CG 00 01 12 04, pp. 2 and 5 of 15).

## THE KENNY AND ENTERPRISE TENDERS TO ACE

32.     Kenny notified ACE of the Underlying Lawsuit on December 12, 2016 and ACE responded on March 27, 2017, advising that it had begun an investigation of the matter under a full and complete reservation of rights.

33.     Enterprise notified ACE of the Underlying Lawsuit on January 18, 2017 and ACE began an investigation of the matter under a full and complete reservation of rights.

34.     Kenny and Enterprise retained counsel to defend the Underlying Lawsuit and have not sought reimbursement of such defense costs from ACE.

35.     On October 26, 2017, ACE issued to Kenny a letter that reserved all rights and outlined ACE's preliminary position on coverage, including that it has no obligation to defend Kenny from the Underlying Lawsuit pursuant to the Policies' Deductible Endorsements, and the Underlying Lawsuit does not allege "property damage" caused by an "occurrence," as required in order for coverage to apply under Policies.

36.     On October 26, 2017, ACE issued to Enterprise a letter that reserved all rights and outlined ACE's preliminary position on coverage, including that it has no obligation to defend Enterprise from the Underlying Lawsuit pursuant to the Policies' Deductible Endorsements, and

the Underlying Lawsuit does not allege "property damage" caused by an "occurrence," as required in order for coverage to apply under Policies.

37.    ACE has filed this declaratory judgment action to request a declaration of ACE's rights and obligations to Kenny and Enterprise for the Underlying Lawsuit under policies issued by ACE to Kenny.

## <u>COUNT I</u>

### <u>(No Duty to Defend Kenny, Enterprise, or Individual Defendants for the Underlying Lawsuit)</u>

38.    ACE re-alleges all of the facts and allegations contained in paragraphs 1 through 37 above as though fully set forth and incorporated herein.

39.    The Deductible Endorsement in the Policies expressly states that Ace does not have a duty to defend Kenny, Enterprise or the Individual Defendants in any suit.

40.    Section 2 of the Deductible Endorsement provides: "you agree with us that we shall not have any duty to defend any such 'suit', nor to pay any 'allocated loss adjustment expense' within the Deductible amounts with respect to any claim or 'suit'." (Policies, Ex. B at Endt. #3; Ex. C at Endt. #36). The deductible amount is $250,000 per occurrence. *Id.*

WHEREFORE, ACE respectfully requests entry of a judgment in its favor and against Kenny, Enterprise and the Individual Defendants, finding and declaring that: (1) ACE has no duty under Policy Nos. HDO G24510517, HDO G24510347, HDO G24525405, G24510544 and G24526161 to provide a defense to Kenny, Enterprise, and the Individual Defendants for the Underlying Lawsuit; (2) ACE is not obligated to reimburse Kenny, Enterprise and the Individual Defendants for any defense fees and costs incurred by Kenny, Enterprise or the Individual Defendants in connection with the Underlying Lawsuit; (3) ACE did not breach any duty to

defend in connection with the Underlying Lawsuit; (4) ACE is entitled to the costs of suit; and

(5) ACE is entitled to any and all other relief this Court deems just and proper.

## COUNT II

### (In the Alternative, No Duty to Defend or Indemnify Because the Underlying Lawsuit Does Not Allege "Property Damage" Caused By An "Occurrence")

41.     ACE re-alleges all of the facts and allegations contained in paragraphs 1 through

40 above as though fully set forth and incorporated herein.

42.     The Policies' Insuring Agreements provide that ACE will pay those sums that the

insured becomes legally obligated to pay as damages because of . . . "property damage" that

occurs during the policy period and is caused by an "occurrence."

43.     The Policies define "property damage" as "physical injury to tangible property

including all resulting loss of use of the property" or "[l]oss of use of tangible property that is not

physically injured."

44.     The Policies define "occurrence" as "an accident, including continuous or

repeated exposure to substantially the same general harmful conditions."

45.     The causes of action alleged against Kenny and Enterprise in the Underlying

Lawsuit, Counts I & II for Breach of Implied Warranty of Habitability and Count V for Breach

of Fiduciary Duty, do not seek damages for "property damage" caused by an "occurrence" under

the ACE Policies, and therefore, ACE has no duty to defend or indemnify Kenny or Enterprise

for the Underlying Lawsuit.

WHEREFORE, ACE respectfully requests entry of a judgment in its favor and against

Kenny and Enterprise, finding and declaring that: (1) under Policy Nos. HDO G24510517, HDO

G24510347, HDO G24525405 and G24510544, the Underlying Lawsuit does not seek damages

from Kenny or Enterprise because of "property damage" caused by an "occurrence" and thus,

ACE has no duty to defend or indemnify Kenny or Enterprise in connection with the Underlying Lawsuit; (3) ACE is entitled to the costs of suit; and (4) ACE is entitled to any and all other relief this Court deems just and proper.

## Count III

### (In The Alternative, Coverage Is Precluded By The "Damage To Your Work" Policy Exclusion)

46.     ACE re-alleges all of the facts and allegations contained in paragraphs 1 through 45 above as though fully set forth and incorporated herein.

47.     In the alternative, and to the extent the Underlying Lawsuit alleges damages because of "property damage" caused by an "occurrence," the "Damage to Your Work" Exclusion in the Policies bars coverage for the Underlying Lawsuit.

48.     The "Damage to Your Work" Exclusion excludes "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'."

49.     The Policies define "Your Work" as (1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations.

50.     To the extent that the Underlying Lawsuit seeks damages from Kenny, Enterprise, or the Individual Defendants for "property damage" to Kenny's work or work performed on Enterprise's behalf after Kenny's work was completed or the work was put to its intended use, there is no coverage under the ACE Policies.

51.     Accordingly, based on the "Damage to Your Work" Exclusion in the Policies, ACE has no duty to defend or indemnify Kenny, Enterprise or the Individual Defendants under the Policies for the claims asserted in the Underlying Lawsuit.

WHEREFORE, ACE respectfully requests entry of a judgment in its favor and against Kenny, Enterprise and the Individual Defendants, finding and declaring that: (1) ACE has no duty to defend or indemnify Kenny, Enterprise and the Individual Defendants in connection with the Underlying Lawsuit on the basis that such claims are precluded by the "Damage to Your Work" Exclusion of the Policies; (2) ACE is entitled to costs of suit; and (3) ACE is entitled to any other further relief this Court deems just and proper.

## **Count IV**

### **(In The Alternative, Enterprise and the Individual Defendants are not Additional Insureds for Their Own Acts)**

52.     ACE re-alleges all of the facts and allegations contained in paragraphs 1 through 49 above as though fully set forth and incorporated herein.

53.     In the alternative, and to the extent the Underlying Lawsuit alleges damages because of "property damage" caused by an "occurrence," Enterprise and the Individual Defendants do not qualify as Additional Insureds under the Policy for the cause of action in the Underlying Complaint related to their alleged breaches of fiduciary duty.

54.     The "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" Endorsement limits the extent of Enterprise's coverage (and, by extension, coverage for the Individual Defendants) as an additional insured "to liability…for property damage…caused, in whole or in part by (1) [Kenny's] acts or omissions; or (2) the acts or omissions of those acting on [Kenny's] behalf; in the performance of [Kenny's] ongoing operations for the additional insured(s) at the location(s) designated above."

55.     The Underlying Complaint sets forth allegations that Enterprise, as developer of the Property, elected several of its employees (the Individual Defendants) to the Developer Board of the Association.

56.     The Association further alleges that Enterprise and the Developer Board knew about defects in the Property, had a fiduciary duty to the members of the Association, and breached that duty by taking no action to investigate, repair, or remediate the defects at the Property.

57.     The Association also alleged that Enterprise and the Individual Defendants breached their fiduciary duties by failing to establish a reserve account to address costs associated with the defects at the Property and failed to turn over all documents and necessary information to the Owner Board of the Association.

58.     The allegations regarding Enterprise and the Individual Defendants' breach of fiduciary duties relate to their own status as developer of the Property and/or position on the Developer Board of the Association.

59.     The Allegations against Enterprise and Individual Defendants for breach of fiduciary duty are not "caused, in whole or in part by (1) [Kenny's] acts or omissions; or (2) the acts or omissions of those acting on [Kenny's] behalf; in the performance of [Kenny's] ongoing operations for the additional insured(s) at the location(s) designated above" and, therefore, Enterprise and the Individual Defendants do not qualify as Additional Insureds under the "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" Endorsement.

WHEREFORE, ACE respectfully requests entry of a judgment in its favor and against Enterprise and the Individual Defendants, finding and declaring that: (1) ACE has no duty to defend or indemnify Enterprise and the Individual Defendants in connection with the Underlying Lawsuit on the basis that Enterprise and the Individual Defendants are not Additional Insureds under the "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization"

Endorsement because breach of fiduciary duty claims against Enterprise and the Individual Defendants do not arise from Kenny's acts or omissions or those acting on Kenny's behalf; (2) ACE is entitled to costs of suit; and (3) ACE is entitled to any other further relief this Court deems just and proper.

## Count VI

### (In The Alternative, Coverage for Damage Related to EIFS Is Precluded By The "EIFS" Policy Exclusion Endorsement)

60.     ACE re-alleges all of the facts and allegations contained in paragraphs 1 through 63 above as though fully set forth and incorporated herein.

61.     In the alternative, and to the extent the Underlying Lawsuit alleges damages because of "property damage" caused by an "occurrence," the "EIFS Exclusion" Endorsement in the Policies bars coverage for certain damages in the Underlying Lawsuit.

62.     The "EIFS Exclusion" Endorsement provides that "[t]his insurance does not apply to "property damage"…arising out of, caused by, or attributable to, whether in whole or in part:

> a. The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction or replacement of any "exterior insulation and finish system" (commonly referred to as synthetic stucco or EIFS) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, priers, accessories, flashing, coatings, caulking or sealants in connection with such a system; or
>
> b. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on any part of that structure.

63.     To the extent that the Underlying Lawsuit seeks damages for "property damage" caused by the design, manufacture, construction, fabrication, preparation, installation, application, maintenance, or repair of EIFS for which Kenny, Enterprise or the Individual Defendants are obligated to pay damages, there is no coverage under the ACE Policies.

64. Accordingly, based on the "EIFS Exclusion" Endorsement in the Policies, ACE has no duty to defend or indemnify Kenny, Enterprise or the Individual Defendants under the Policies for the claims related to damage arising out of, caused by or attributable to EIFS asserted in the Underlying Lawsuit.

WHEREFORE, ACE respectfully requests entry of a judgment in its favor and against Kenny, Enterprise and the Individual Defendants, finding and declaring that: (1) ACE has no duty to defend or indemnify Kenny, Enterprise and the Individual Defendants in connection with claims in the Underlying Lawsuit related to damage arising out of, caused by, or attributable to EIFS on the basis that such claims are precluded by the "EIFS Exclusion" Endorsement of the Policies; (2) ACE is entitled to costs of suit; and (3) ACE is entitled to any other further relief this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ACE prays that this Court enter judgment in its favor and against Defendants Kenny, Enterprise and the Individual Defendants, and enter an Order finding and declaring the rights of the parties as follows:

A. ACE has no duty to defend Kenny, Enterprise and the Individual Defendants in connection with the Underlying Lawsuit because the Deductible Endorsement in the Policies expressly eliminates any duty to defend;

B. ACE has no duty to defend or indemnify Kenny, Enterprise and the Individual Defendants for the Underlying Lawsuit because there are no allegations of "property damage" caused by an "occurrence";

C. ACE has no duty to defend or indemnify Kenny, Enterprise and the Individual Defendants for the Underlying Lawsuit because the theories of liability asserted

against Kenny, Enterprise and the Individual Defendants, breach of implied warranty of habitability and breach of fiduciary duty, are not covered under the Policies;

D.    ACE has no duty to defend or indemnify Enterprise or the Individual Defendants as Additional Insureds because they do not qualify as Additional Insureds under the "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" Endorsement;

F.    ACE has no duty to defend or indemnify Kenny, Enterprise or the Individual Defendants for the Underlying Lawsuit because any "property damage" to Kenny's or Enterprise's work is excluded by Exclusion l. of the Policies;

G.    ACE has no duty to indemnify Kenny, Enterprise or the Individual Defendants for property damage arising out of, caused by or attributable to EIFS because of the "EIFS Exclusion" Endorsement;

H    ACE is entitled to costs incurred with respect to this action; and

I.    ACE is entitled to any further relief that this Court deems just and proper under the circumstances.

Dated:  April 4, 2018          Respectfully submitted,


By: /s/ Kevin R. O'Neill _____
     Attorneys for ACE American Insurance Company

Joyce C. Noyes (ARDC No. 6215889)
Kevin R. O'Neill (ARDC No. 6300457)
Walker Wilcox Matousek, LLP
One North Franklin Street, Suite 3200
Chicago, IL 60606
P: (312) 244-6700 / F: (312) 244-6800
jnoyes@wwmlawyers.com
koneill@wwmlawyers.com